**Fred HERVEY and Fred Hervey, Trustee, Appellants,**

v.

**Walter G. PASSERO, Individually and d/b/a Walter G. Passero, Associates, Appellee.**

**No. 08-81-00289-CV.**

Court of Appeals of Texas, El Paso.

Feb. 9, 1983.

Appellants' Rehearing Denied March 16, 1983.

Elizabeth Rogers, John B. Luscombe, Jr., J. Morgan Broaddus, III, Peticolas, Luscombe & Stephens, El Paso, for appellants.

Jack Ratliff, Terry Wyrick, Kathleen C. Anderson, El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

OSBORN, Justice.

This appeal is from a judgment based upon a jury verdict awarding damages to a real estate agent for breach of an "exclusive agency to sell"[1] contract. We modify the trial court's judgment and as modified, the judgment is affirmed.

On March 28, 1978, Fred Hervey, Trustee, as owner of the O.A. Danielson Survey 310, which was described as containing 384 acres, and the O.A. Danielson Survey 311, which was described as containing 640 acres, signed an "Exclusive Real Estate Listing Agreement" and thereby appointed Walter G. Passero, Associates, Realtors, the exclusive agent to sell the two listed tracts of land in El Paso County. The commission was to be 5% of the selling price and the agreement expired on August 1, 1978. The land was listed at $6,500.00 per acre, and the terms required 29% in cash with the balance payable in ten years with 9¾% interest or in seven years with 9% interest.

Although they are not numbered in the agreement, the third, sixth and eighth paragraphs of the listing agreement are at the heart of this controversy, and with our numbers they provide:

3

If a sale or exchange is made within one year after the expiration of this agency,

or any extension thereof, to any party with whom WALTER G. PASSERO ASSOCIATES, negotiated during the agency period, and WALTER G. PASSERO ASSOCIATES, notifies the undersigned in writing of such negotiations within fifteen days after the termination of this agency, the undersigned agrees to pay WALTER G. PASSERO ASSOCIATES the commission herein provided.

6

If, during the term of this Contract, the undersigned shall withdraw said property for sale or exchange or otherwise prevent performance by WALTER G. PASSERO ASSOCIATES, the undersigned agree to pay a commission of five percent (5%) of the selling price.

8

If the sale or exchange is effected after the period of this agreement to a person, or on behalf of a person, to whom it was submitted by WALTER G. PASSERO ASSOCIATES, the undersigned shall pay said commission to WALTER G. PASSERO ASSOCIATES.

Walter Passero wrote numerous letters and made many contacts in an attempt to sell the two tracts before the exclusive listing expired, but no sale was made. He did write and contact Mr. I.T. Schwartz with Foster-Schwartz, an El Paso land development association, who eventually bought Survey 310 from Mr. Hervey on January 29, 1979, and obtained an option for Survey 311, which option expired without being exercised.

During the period of the agency contract, Mr. Hervey withdrew 80.16 acres of Survey 310, which he refused to sell. These were frontage acres with access to existing roads and apparently some of the choice acres in the land listed for sale. At some time, Mr. Hervey told Mr. Passero not to try to sell the two surveys to Foster-Schwartz, because these were people who he himself had dealt with on numerous occasions and he

1. *White v. Larson,* 586 S.W.2d 212 (Tex.Civ. App.—El Paso 1979, no writ).

was primarily interested in Mr. Passero trying to find new prospective purchasers.

In answer to special issues, the jury found:

(1) Passero did "negotiate" with Foster-Schwartz regarding the property listed in the agreement between 3/28/78 and 8/1/78.

(2) Passero did "submit" the property listed in the agreement to Foster-Schwartz between 3/28/78 and 8/1/78.

(3) Hervey withdrew from the market property listed in the listing agreement during the term of the agreement.

(4) Hervey withdrew 80.16 acres.

(5) Such withdrawal was a proximate cause of damage to Passero.

(6) Damages proximately caused by the withdrawal were $26,052.00.

(7) Hervey prevented performance of the listing agreement by Passero between 3/28/78 and 8/1/78.

(8) Such conduct was a proximate cause of damage to Passero.

(9) Damages from such conduct were $316,875.00.

(10) Reasonable attorney's fees for trial and appeal are $39,125.00 and $5,000.00.

(11) Six months was a reasonable time after the agreement expired for a commission to be paid for a sale to a party to whom Passero had submitted the land during the listing period.

(12) Passero did not waive his right to collect a commission on any sale to Foster-Schwartz.

Based upon these findings, the court entered judgment for Passero for $356,000.00, plus an additional $5,000.00 if an appeal be perfected.

The first point of error asserts the trial court erred in refusing to submit to the jury Appellants' requested special issue inquiring whether there was a valid contract between the parties. The argument is made that there were conflicting clauses in the listing agreement which left its meaning indefinite and uncertain, and that there was never a meeting of the minds on what exactly its terms were in order for there to be a valid contract. This is not a case where one party made an offer and the other a counter-offer and then a question arose as to there being a meeting of the minds. Both parties signed the listing agreement and thereby agreed to whatever terms were included along with such interpretation as might be required of any contract.

 Generally, the issue of whether or not the parties have made a contract is a question of fact. *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554 (Tex.1972). But, this rule does not apply when undisputed documentary evidence shows the parties intended to execute a valid listing agreement and no terms were left to a later agreement. *Henry C. Beck Company v. Arcrete, Inc.,* 515 S.W.2d 712 (Tex.Civ.App.—Dallas 1974, writ dism'd). It was the duty of the court to determine, as a matter of law, if the agreement constituted a valid contract. *Diamond Mill Co. v. Adams-Childers Co.,* 217 S.W. 176 (Tex.Civ.App.—Austin 1920, no writ). Point of Error No. One is overruled.

The second point of error contends the trial court erred in holding as a matter of law that the listing agreement was not ambiguous in its terms and conditions. Appellant contends that the listing agreement was ambiguous and that the language in paragraphs three and eight is conflicting and sets different standards to be used in determining how the agent could earn his commission. Appellant argues the ambiguity arises because under paragraph three the agent could earn a commission if the listed property was sold or exchanged within one year to any party with whom Passero had negotiated for a sale and provided notification was given within fifteen days after the agency terminated; but, under paragraph eight a commission could be earned even more than a year after the agency terminated if the agent had only submitted the property to the ultimate purchaser. Clearly, one clause has a one-year limitation period, the other has none; one requires negotiations toward a sale, the other does not; one requires notification as to endeavors to sell, the other does not.

In addition, the argument is made that paragraph six is ambiguous because there is no specification as to whether the commission for withdrawal applies to a withdrawal of all or to a withdrawal of only part of the property.

First, we note that whether a contract is ambiguous is one of law for the court. In the interpretation of a contract, the primary concern of a court is to ascertain and to give effect to the intention of the parties as expressed in the agreement. Every effort must be made to give effect to each provision of the contract. If a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517 (Tex.1980); *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154 (1951).

The fact that paragraph three of the agreement permits recovery of a commission under certain circumstances and paragraph eight permits recovery of a commission under different circumstances does not make the agreement ambiguous. It does give the agent a choice or option as to which clause he may rely upon in seeking to recover. But, in either event, the requirements for his recovery are clear and definite and not ambiguous. The fact that the owner of the property chose to make a recovery easier under one clause than another can be of no concern to the court.

A court is not at liberty to revise an agreement while professing to construe it. Nor does it have the right to make a contract for the parties—that is, a contract different from that actually entered into by them. Neither abstract justice nor the rule of liberal construction justifies the creation of a contract for the parties which they did not make themselves or the imposition upon one party to a contract of an obligation not assumed. *General American Indemnity Company v. Pepper,* 161 Tex. 263, 339 S.W.2d 660 (1960).

With regard to the contention about paragraph six, we believe the owner became liable for a 5% commission for each and every acre withdrawn based upon a selling price of $6,500.00, which was the selling price set forth under the "Term of Listing." "Said property" in this clause refers to the property listed for sale, being O.A. Danielson Surveys 310 and 311, and the withdrawal of all or any part of such land from the listing agreement would trigger the provisions for payment of a commission under clause six. There is no ambiguity. Point of Error No. Two is overruled.

The next point states the trial court erred in not letting the Appellant present evidence to the jury as to the intent of the parties as to the circumstances under which Appellee would be entitled to a commission. Parol evidence is admissible to explain or clarify an ambiguity in a contract. If there is no ambiguity, parol evidence is not admissible. In such a case, the court must find the parties' intention from the language used in the contract. What the parties thought they said or what they intended to say is of no real concern. In *Lewis v. East Texas Finance Co.,* 136 Tex. 149, 146 S.W.2d 977 (1941), the court said:

If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, which, on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction.

We find no error in excluding Appellant's testimony in the bill of exception as to why he entered into the agreement or what he thought its terms meant. Point of Error No. Three is overruled.

The fourth point of error contends the trial court erred in submitting Special Is-

sues 2 and 9 because such issues called upon the jury to determine issues of law rather than of fact, in that said issues asked the jury to interpret the meaning of the listing agreement. The issues in question, with the part complained of being underlined, are as follows:

### QUESTION NO. 2

Did Walter Passero submit the property in question *under the terms of the listing agreement* marked Plaintiff's Exhibit 2 to Mickey Schwartz of Foster-Schwartz Developers between March 28, 1978, and August 1, 1978?

### QUESTION NO. 9

What sum of money, if paid now in cash, would fairly compensate Passero for damages, if any, proximately caused by prevention of his performance *under the listing agreement,* if any you have found?

The construction of a contract is a question of law for the court, and a jury may not be called upon to construe the legal effect of an instrument. *Trinity Universal Insurance Company v. Ponsford Brothers,* 423 S.W.2d 571 (Tex.1968). To include in a special issue a phrase inquiring if conduct was required "under the terms of the contract" has the effect of asking the jury a question of law as to the construction or meaning of the contract. *Wirtz v. Orr,* 533 S.W.2d 468 (Tex.Civ.App.—Eastland 1976, writ ref'd n.r.e.); *Schoenberg v. Forrest,* 228 S.W.2d 556 (Tex.Civ.App.—San Antonio 1950, writ ref'd n.r.e.); *Myers v. Minnick,* 187 S.W.2d 941 (Tex.Civ.App.—San Antonio 1945, no writ); *Kemper v. Police & Firemen's Ins. Ass'n,* 48 S.W.2d 254 (Tex. Comm'n App.1932). Issue No. 9 does not inquire whether the contract requires certain conduct. Issue No. 2 presents a closer question but one which we need not decide. Appellants' objections to the court's charge do not contain any complaint that Issues 2 and 9 submit issues of law for the jury's determination. This objection has not been preserved for appeal. Rule 274, Tex.R. Civ.P., provides in part:

A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Any complaint as to an instruction, issue, definition or explanatory instruction, on account of any defect, omission, or fault in pleading, shall be deemed waived unless specifically included in the objections.

Point of Error No. Four is overruled.

The next point claims the trial court abused its discretion in failing to order a remittitur because the jury's answer to Special Issue No. 9 was excessive. The actual acreage owned by Appellant in the two surveys was determined to be approximately 975 acres and not 1,024 as stated in the listing agreement. The jury awarded damages of $316,875.00 which was based on a 5% commission of 975 acres at a selling price of $6,500.00 per acre.

It is Appellant's contention that, even if he sold 340 acres out of Survey 310, there never was any sale of Survey 311 and the damages are excessive. He contends that under no circumstances should the damages have been in excess of $110,500.00, which would be a 5% commission on 340 acres in Survey 310.

In answer to the series of questions about "withdrawal from the market" (Special Issues 3, 4, 5 and 6), the jury found damages of $26,052.00. In answer to the series of questions about "prevent performance" (Special Issues 7, 8 and 9), the jury found damages of $316,875.00. It is apparent from paragraph six of the listing agreement that a commission could be recovered if the owner of the property did either one of two acts, i.e., (1) withdrew the property from sale or (2) otherwise prevented performance. The damage arrived at in the second series of issues, and the ones upon which judgment was rendered, are obviously based on the second provision for recovery, that being "otherwise prevent performance." "Otherwise" means something different from that previously stated and must mean some act or conduct besides "withdrawing the property."

Mr. Passero testified that after the agreement was signed and in either April or May, 1978, he indicated to Mr. Hervey that he would like to make an active effort to sell Surveys 310 and 311 to Foster-Schwartz. He said he was told not to become active with them and "to leave Foster-Schwartz alone." Mr. Hervey acknowledged telling Mr. Passero to stay away from Foster and Schwartz, but said this was before the signing of the listing agreement. The jury apparently believed Mr. Passero and found this conduct by Mr. Hervey prevented Mr. Passero from selling the two surveys, one of which Mr. Hervey eventually did sell to Foster-Schwartz.

The leading case on the right of a broker to recover damages where the owner of the property had made performance impossible is *Park v. Swartz,* 110 Tex. 564, 222 S.W. 156 (1920), where the court said:

While the contract was in full force, the defendants breached it and made its further performance by the plaintiff impossible by selling the remaining lots themselves or through other means. The plaintiff, on his part, had faithfully performed the contract up to that time. His suit was for the breach of the contract. He was awarded judgment in the amount as fixed by the contract for the sales which the action of the defendants deprived him from making.

\* \* \* \* \* \*

Upon establishing the contract, his readiness and willingness to perform it, and that he was denied opportunity to perform it through its wrongful breach by the defendants, rendering its performance by him impossible, the plaintiff made out his case; and *prima facie* was entitled as damages to the amount which under the contract he would, presumably, have earned if his rights had been respected. If the plaintiff could not or would not have performed the contract, regardless of its breach by the defendants, it was incumbent upon them to make the proof.

That decision was followed in *McDonald v. Davis,* 389 S.W.2d 494 (Tex.Civ.App.—

Houston 1965, no writ), where the court On Motion for Rehearing specifically stated that the rule announced in the *Park* case "is not made dependent on whether the property has in fact been sold." *Also see: McGregor v. Alexander,* 274 S.W.2d 867 (Tex.Civ. App.—Amarillo 1954, writ ref'd n.r.e.).

More recently, Chief Justice Nye in *Albright v. Texcellere Corporation,* 561 S.W.2d 533 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.), wrote:

Generally when a broker has contracted for the exclusive right to sell property and is ready, willing, and has performed his part of the contract, and his principal wrongfully breaches the contract thus denying the broker the opportunity to perform, the broker is entitled to recover as damages the amount which under the contract he, presumably, would have earned had his right been respected. *Park v. Swartz,* 110 Tex. 564, 222 S.W. 156 (1920). In such instances the broker's cause of action is not to recover the commission promised to him but to recover damages for the principal's breach of the contract. This exclusive contractual right to resell the building had some value to Albright. The broker is ordinarily entitled to recover the reasonable prospective profits he would have earned but for the breach. *Sunshine v. Manos,* 496 S.W.2d 195, 200 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); *Dowd More Co. Realtors v. McDonald,* 494 S.W.2d 282 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ); *McDonald v. Davis,* 389 S.W.2d 494 (Tex.Civ.App.—Houston [1st Dist.] 1965, no writ). Prima facie, that profit could be represented by the stipulated commission in the brokerage contract.

The trial court did not err in refusing to order a remittitur. Point of Error No. Five is overruled.

Points of Error Six and Seven assert that there is no evidence and insufficient evidence to support the jury's answer to Special Issue No. 7 that Appellant prevented performance by Appellee. We pass on these issues under the rule set forth in

*Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). Mr. Passero testified that he was told to leave Foster-Schwartz alone. In effect, he was denied the right to make every effort to sell to this prospective purchaser who eventually bought one survey and took an option on the other one. Mr. Hervey acknowledged placing that restriction upon Mr. Passero, even though no such restriction was in the written agreement. The evidence is sufficient to support the jury finding. Points of Error Six and Seven are overruled.

By a single cross-point the Appellee asserts the trial court erred in holding that he was not entitled to an award of prejudgment interest on the sum recovered in the judgment. The Appellee has preserved the point by excepting to the trial court's judgment. *See: Dietz v. Dietz,* 540 S.W.2d 418 (Tex.Civ.App.—El Paso 1976, no writ).

Article 5069–1.03, Tex.Rev.Civ.Stat., provides:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

We are faced with the two same questions which the court faced in *Stahl Petroleum Company v. Phillips Petroleum Company,* 550 S.W.2d 360 (Tex.Civ.App.—Amarillo 1977), *aff'd,* 569 S.W.2d 480 (Tex.1978). They are: (1) is this a written contract ascertaining the sum payable as meant by the statute? and (2) when is the sum, as ascertained, due and payable?

In answer to the first question, we hold that the contract did provide the necessary terms to ascertain the sum payable. As the court said in *Federal Life Ins. Co. of Chicago v. Kriton,* 112 Tex. 532, 249 S.W. 193 (1923), " * * * it is not necessary in a case like the present one that the contract shall itself establish a fixed liability in a definite amount as of a date certain." The fact that the amount of recovery could not be ascertained until after a trial of the cause does not affect the right to interest on the amount of a claim. *Sanchez v. Matthews,* 636 S.W.2d 455 (Tex.App.—San Antonio 1982, no writ). In *Maxey v. Texas Commerce Bank of Lubbock,* 571 S.W.2d 39 (Tex.Civ.App.—Amarillo 1978), *writ ref'd n.r.e.,* 580 S.W.2d 340 (Tex.1979), the court pointed out that the relevant consideration in permitting the award of prejudgment interest is whether the measure of recovery (not necessarily the amount) is fixed by conditions existing at the time the claim arose. In this case, the contract set a 5% commission with a selling price of $6,500.00 per acre. The proof established that 975 acres were actually owned by Appellant in the two surveys.

As to the second question, the sum was payable no later than August 1, 1978, the last day of the contract. Appellee could not sell as the exclusive agent of Appellant after that date. *Young v. Newbold,* 119 Kan. 394, 239 P. 1106 (Kan.1925). The Appellee's cross-point is sustained.

The judgment of the trial court is reformed to provide for prejudgment interest at the rate of 6% per annum from September 1, 1978, and as reformed the judgment is affirmed.