**Michael A. REILLY, Appellant,**

v.

**RANGERS MANAGEMENT, INC., and CCK, Inc., Appellees.**

No. 2–85–107–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 10, 1986.

Hughes & Luce, Robert H. Mow, Jr., R. Doak Bishop, Paul M. Koning, Dallas, for appellant.

Kelly, Appleman, Hart & Hallman, John B. McAdams, Fort Worth, for appellees.

Before FENDER, C.J., and HOPKINS and CLYDE R. ASHWORTH (Retired, Sitting by Assignment), JJ.

## OPINION

FENDER, Chief Justice.

This is an appeal from the granting of a summary judgment. Appellees, Rangers Management, Inc., hereinafter RMI, and CCK, Inc., the general partners of the Texas Rangers, Ltd., hereinafter TRL, sued for declaratory judgment pursuant to the Texas Uniform Declaratory Judgments Act, TEX.REV.CIV.STAT.ANN. art. 2524–1 (Vernon 1965), *repealed by* TEX. CIV.PRAC. & REM.CODE ANN. sec. 37.-005 (Vernon 1986), to have certain amendments to their Limited Partnership Agreement declared adopted and also to declare the Second Amended Limited Partnership Agreement in full force and effect. Both parties moved for partial summary judgment. On April 22, 1985, the trial court overruled appellant's motion for partial summary judgment and granted appellees' motion for partial summary judgment. The trial court ruled that the amendments to the limited partnership agreement and the Second Amended Limited Partnership Agreement were in full force and effect as of March 13, 1984. A hearing was subsequently held with regard to appellees' attorneys' fees and a final judgment was entered.

We affirm.

## Factual Background

RMI has been the managing general partner of TRL since May 29, 1974, when TRL was first formed. The Original Limited Partnership Agreement, hereinafter Original Agreement, of TRL was adopted on May 29, 1974, by unanimous consent of all the partners, including appellant, Michael Reilly.

On April 29, 1980, the First Amended Limited Partnership Agreement, hereinafter First Agreement, was adopted. This First Agreement was unanimously approved by all of the partners, both general and limited.

At a meeting of the partners of TRL held on March 13, 1984, RMI and CCK, the general partners, proposed to amend the First Agreement. The amendments are contained in the Second Amended Limited Partnership Agreement, hereinafter Second Agreement, of TRL. The amendments are:

1. to change the value for which newly issued units of TRL could be issued from at least $50,000.00 to at least their fair market value determined by the managing general partner of TRL on an annual basis;

2. to change the number of authorized units of TRL from 300 to an unlimited number; and

3. to give each limited partner in TRL a pre-emptive right to purchase its pro rata portion of any of the newly issued units.[1]

Under the First Agreement, no more than 300 partnership units could ever be issued. Also, the price per unit was set by the First Agreement to be no less than $50,000.00 each.

At the time the Second Agreement was proposed for adoption on March 13, 1984, there were two general partners, CCK and RMI, and 17 limited partners, including appellant. The general partners owned 83.78% of the outstanding units of TRL.[2] Appellant owns .69% of TRL. A vote was taken on the amendments and the two general partners and five limited partners voted in favor of the amendments. Eleven limited partners, including appellant, did not vote. One limited partner voted against the amendments.

## The Issue

The central issue in this case is whether the written consent of only 66⅔ percent of the outstanding units of TRL was required to adopt the amendments, rather than the consent of the owners of all the outstanding units of TRL. Appellant contends in his first ground of error that the trial court erred in granting summary judgment because as a matter of law unanimous consent was needed to adopt the amendments. In effect, appellant is saying that the trial court erred in not granting his own motion for summary judgment. Article XV of the First Agreement concerns when unanimous consent is necessary to pass an amendment. Article XV provides in relevant part:

C. *Unanimous Consent of Limited Partners.* Subject to the provisions of ARTICLE XIV hereof, any amendment to this Agreement which would adversely affect the general liabilities of the Limited Partners, or change the method of allocation of the profits or losses or the distribution of the Partnership funds or assets shall require the consent in writing of all Limited Partners.

D. *Two-Thirds Consent of Partners.* Subject to the provisions of ARTICLE XII and XIV hereof, any other amendment to this Agreement shall require the approval in writing of Partnership Percentages aggregating sixty-six and two-thirds percent (66⅔).

Appellant contends that unanimous consent is required under art. XV(C) to adopt the amendments because the amendments:

1. would adversely affect the general liabilities of the limited partners;

---

1. This third amendment is not relevant to appellant's appeal.

2. Since that time, six limited partners have sold their units in TRL to CCK, so that the general partners owned 89.85% of TRL as of September, 1985.

2. would change the method of allocation of profits or losses; or

3. would change the distribution of partnership funds or assets.

### Appellees' Motion for Summary Judgment

In their motion for summary judgment, appellees contended that the summary judgment evidence establishes the following:

1. more than 66⅔ of the limited partners voted to approve the Second Agreement and Amendments;

2. as a matter of law, the amendments were adopted.

Appellees asked that the amendments and Second Agreement be declared in full force and effect.

Appellant responded to the motion contending that:

1. the summary judgment evidence of appellees does not show that the amendments do not change the method of allocation of profits and losses and the distribution of funds and assets;

2. the summary judgment evidence shows the opposite; and

3. the method of allocation and the distributions are changed because the limited partners are required, under the new amendments, to contribute more capital in order to maintain their percentage ownership of the partnership.

Appellant filed an additional response contending that the summary judgment should not be granted because:

1. the amendments were not properly adopted;

2. the amendments were adopted in violation of appellees' fiduciary duty to the limited partners; and

3. the amended certificate was not signed by all the partners.

### Appellant's Motion for Summary Judgment

Appellant also filed a motion for summary judgment contending that:

1. the amendments are invalid because unanimous consent was required to adopt them; and

2. unanimous consent was required because the amendments change the method of allocation of the profits or losses or the distribution of the partnership funds or assets.

Appellees responded to appellant's motion asserting that:

1. the affidavit of Reilly is objectionable and of no probative value to the extent that it contains testimony concerning the fair market value of the limited partnership units;

2. the affidavit of Reilly is objectionable because it is insufficient to qualify him as an expert on the value of the units;

3. the value of the units is irrelevant to the lawsuit; and

4. the affidavit of Reilly is objectionable because it seeks to give a legal conclusion on the ultimate issue in the case: whether unanimous consent was needed to adopt the amendments.

■ In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); TEX.R. CIV.P. 166–A. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *Id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery Ward v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Insurance Company,* 480 S.W.2d 176, 178 (Tex. 1972). Every reasonable inference from

the evidence must be indulged in favor of the non-movant and any doubts resolved in his favor. *Montgomery Ward,* 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American,* 391 S.W.2d at 47. If such uncontroverted evidence is from an interested witness, it cannot be considered as doing more than raising a fact issue, unless it is clear, direct, positive and free from inconsistencies and contradictions. *Id.* The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of his cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

Concerning the interpretation of the contract, first, we note that whether a contract is ambiguous is one of law for the court. *See Hervey v. Passero,* 648 S.W.2d 344, 348 (Tex.App.—El Paso), *aff'd in part and rev'd in part,* 658 S.W.2d 148 (Tex. 1983) (reversed as to damages only). In the interpretation of a contract, the primary concern of a court is to ascertain and to give effect to the intention of the parties as expressed in the agreement. *See Hervey,* 648 S.W.2d at 348. Every effort must be made to give effect to each provision of the contract; if a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. *See id.*

### Appellees' Summary Judgment Proof

Appellees contended in their motion for summary judgment that only 66⅔% vote is needed to approve and pass the new amendments. They further contended that because more than 66⅔% of the partners voted for the amendments, the amendments were validly adopted. In support of this they copied into their motion the portions of the First Agreement, arts. XV(C) and (D), which state when unanimous consent rather than 66⅔% consent is needed to pass an amendment. Appellees also included in their summary judgment proof the entire First Agreement.

To find out whether the amendments were properly adopted by 66⅔% vote, as appellees asked the trial court to find, we look at art. XV(C), quoted in appellees' motion, concerning when unanimous consent was needed to adopt the amendments. We restate art. XV(C) and (D) here for the reader's benefit:

C. *Unanimous Consent of Limited Partners.* Subject to the provisions of ARTICLE XIV hereof, any amendment to this Agreement which would adversely affect the general liabilities of the Limited Partners, or change the method of allocation of the profits or losses or the distribution of the Partnership funds or assets shall require the consent in writing of all Limited Partners.

D. *Two-Thirds Consent of Partners.* Subject to the provisions of ARTICLE XII and XIV hereof, any other amendment to this Agreement shall require the approval in writing of Partnership Percentages aggregating sixty-six and two-thirds percent (66⅔%).

As stated earlier, appellant contends that the amendments change or affect the three things listed in art. XV(C). We will first address whether the amendments "adversely affect the general liabilities of the limited partners."

### Adverse Affect on General Liabilities of Limited Partners

Appellant contends that the new amendments, which allow more than 300 limited partnership units to be issued for less than $50,000.00, change the general liabilities of the limited partners and, therefore, require unanimous consent.

This argument was not raised by appellant in his original answer, first amended original answer, response to appellees' motion for partial summary judgment nor in his additional response. Accordingly, it cannot be considered on appeal. Issues not expressly presented to the trial court, by written motion, answer or other response shall not be considered on appeal as grounds for reversal. *See* TEX. R.CIV.P. 166–A(c).

■ Even if it had been raised, art. XI of the First Agreement states in subdivision E concerning the "Liability of Limited Partners" that "the Limited Partners shall have no personal liability with respect to any liabilities or obligations of the Partnership." This is in accordance with the Texas Uniform Limited Partnership Act which states in sec. 2 that the limited partners shall not be bound by the obligations of the partnership. *See* TEX.REV.CIV.STAT. ANN. art. 6132a, sec. 2 (Vernon 1970). A limited partner is one whose liability is limited to the amount of his or her contribution. *See* 19 R. HAMILTON, BUSINESS ORGANIZATIONS sec. 211 (Texas Practice 1973). General partners are the ones who conduct the business of the partnership and who are personally liable to creditors as in an ordinary partnership. *See id;* TEX.REV.CIV.STAT.ANN. art. 6132a, sec. 10 (Vernon 1970).

■ An amendment which would adversely affect the *general liability* of the limited partners is one that would make a limited partner liable beyond the amount of his contribution to the partnership. It is not, as appellant suggests, one which would create an unlimited right of forced capital contribution, or create a "liability" to the partnership. If the drafters had meant the word "general liability" to include capital contributions, the word "capital contributions" would have been used. The amendments do not adversely affect the general liabilities of the limited partners.

### Method of Allocation of Profits and Losses

Appellant next contends that the amendments "change the method of allocation of profits and losses." Article VIII(A) states how partnership profits and losses are to be allocated and how distributions are to be made. Subdivision A, concerning allocation of profits and losses, is as follows:

A. *Allocation of Profits and Losses.* The profits and losses of the Partnership as well as each Partner's separate distributive share of all taxable income, gains, losses, deductions and credits of the Partnership shall be allocated to the Partners as follows:

(1) To the Managing General Partner that portion equal to an amount which is the result of multiplying the percent of Units owned by such Managing General Partner in the Partnership times one hundred fifty percent (150%) or its percentage of the total Units in the Partnership plus 7.5% of total profits and losses, whichever is less.

(2) To the Limited Partners and General Partners other than the Managing General Partner, the remaining share, after subtracting that allocated to the Managing General Partner, in proportion to each such Partner's Units to total Units owned by such Partners.

Although the wording of art. VIII of the first amended agreement was not changed, appellant contends that the method of allocation of profits and losses has been changed because the "definition" of the word "unit" as defined in art. VI(J) has been changed so that an unlimited number of units can be issued at a price to be determined by the managing general partner, whereas before the amendments, only 300 units could be issued and in no event would a unit be issued for less than $50,-000.00. Appellant contends that because the profits and losses are to be allocated "in proportion to each such Partner's Units to total Units owned by such partners," then the very basis of the method of allocation is changed.

■ Appellant is correct in recognizing that a certain number of dollars in profits distributed by the method indicated in art. VIII(A) to, for instance, 1000 partners, is going to result in each of the partners getting a lesser amount than, for instance, if these profits were distributed to only ten partners. In other words, the more partners there are, the lesser amount each is going to get of the profits. However, when the number of partners is increased, this is not a change in the *method* of allocation of the profits and losses. In-

stead, this is simply a change in the *number of people* to whom the profits and losses will be allocated.

A change in the *method* of the allocation in profits and losses would be if art. VIII(A) was changed so that the managing general partner received as his share of profits and losses, a different *percentage.* Another example would be an amendment which gave the general partners a set amount rather than allocating to them their share in proportion to the total of units owned by them to the total units owned by all the partners.

We find that the method of allocation of profits and losses has not been changed.

### Distribution or Method of Distribution

First of all, we note that it is unclear how art. XV(C) concerning "distributions" is to be read. It is not clear whether or not the words "change the method of" modify the words "the distributions of the partnership funds or assets." In other words, XV(C) can be read two ways: 1) "... any amendment ... which would ... change the method of ... the distribution of the Partnership funds or assets shall require [unanimous consent]," and 2) "any amendment ... which would ... change ... the distribution of the Partnership funds or assets shall require [unanimous consent]."

■ We believe that a well-settled rule of contract construction will show that either interpretation is the proper one. The rule is that if general terms appear in a contract, they will be overcome and controlled by specific language dealing with the same subject. *See City of San Antonio v. Heath & Stich, Inc.*, 567 S.W.2d 56,

60 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.).

In the first amended agreement there is a provision dealing with "Distributions."[3] In that provision, the method of distributing funds and assets is described. Because this provision is specifically titled "Distributions," it is logical that, under this rule, this is what the parties are referring to in art. XV(C) when they say "distribution" or "method of distribution."

Therefore, we hold that the specific provision in art. VIII(B) concerning "Distributions" is what art. XV(C) is referring to when using the word "distribution." We further hold that it does not matter whether art. XV(C) is read to say "distribution" or "method of distribution" because, although art. VIII(B) is entitled "Distributions", it clearly sets out the *method* by which funds and assets are distributed.

That we should look exclusively to art. VIII(B) concerning "Distributions" to interpret the word "distribution" in art. XV(C) is also supported by a full reading of art. XV(C). Provisions of a contract should be construed to be read harmoniously with each other so that effect can be given to the intent of the parties. *Southland Royalty Co. v. Pan American Petro. Corp.*, 378 S.W.2d 50, 53 (Tex.1964). Thus, art. XV(C) cannot be read in isolation, but must be viewed in context with the whole agreement. Article XV(C) discusses changes in the "method of *allocation of the profits or losses* or the *distribution of the Partnership funds or assets*...." Article VIII(A) and (B) are entitled "Allocation of Profits and Losses" and "Distributions". It is logical to assume that because "distributions" and "allocations" are mentioned together in

3. Article VIII(B) is set out in full as follows:

B. *Distributions.* The Managing General Partner shall at all times maintain such liquid assets in the Partnership, as in his judgment shall be necessary to provide for the Partnership's operations, capital and expansion requirements, liabilities, debt service and contingencies of the Partnership and as may be required by any agreement to which the Partnership may be a party. Subject to the foregoing, the Managing General Partner may make cash distributions to the Partners at such times and in such amounts as the Managing General Partner may determine in his sole discretion; provided, however, that in no event shall any distribution be made in violation of the Texas Act. Such distributions shall be allocated to the Managing General Partner and to the other Partners in the same proportions as profits and losses are allocated as described in Paragraph A of Article VIII hereof.

both art. XV(C) and in art. VIII, then they are related.

Appellant is contending that the words "distribution" and "allocation of profits or losses" should not be interpreted by looking to the specific provisions entitled "Distributions" and "Allocation of Profits and Losses." Instead, appellant asks us to look at the general terms of the contract and to interpret "distribution" to mean "amount of funds and assets given out." Because of the rule of construction cited earlier, this we decline to do.

### Does Dilution Change the Method of Distribution?

■ Appellant contends that the amendments allow a dilution through the sale of more than 300 units which would potentially reduce or eliminate the distribution to which a partner was previously entitled, and that this is a change in "the distribution of the partnership funds or assets." While it is true that the sale of more partnership units would potentially reduce or eliminate the distribution of funds and assets, there is still no change in the method of distribution as set out under art. VIII sec. (B).

### The "Subject to" Language

Appellant points out that art. XV(C) says that *"subject to art. XIV"* (*emphasis ours* ), amendments which change the same three things [4] just discussed in this opinion can only be passed by unanimous consent. Appellant interprets the "subject to" to mean the same thing as "except for." In other words, appellant contends, art. XIV overrides art. XV(C) and XV(C) does not apply to it; i.e., no unanimous consent is required to let in new limited partners under art. XIV.

Article XIV is as follows:

A. *Admission of Additional Limited Partners.* The Managing General Partner shall have the authority to admit Additional Limited Partners and to issue additional Partnership Interests to such Additional Limited Partners, any such additional Partnership Interest to be in the amount of one Unit or in multiples thereof. The Partnership Contribution to be made by such Additional Limited Partner shall be in the form of cash. The Managing General Partner shall have the authority to determine the cash price for each Unit so issued to an Additional Limited Partner, PROVIDED, HOWEVER, that no Unit shall be issued for less than $50,000 cash. It is specifically PROVIDED, HOWEVER, that the acts described above in this paragraph A shall require the written consent of Partners owning at least 66⅔ percent of all Units owner by Partners.

It is clear that art. XIV concerns when and how certain new limited partners can be admitted to the partnership. Article XIV expressly allows them to be admitted on 66⅔% vote.

The question is: Why did the drafters of the agreement make art. XV(C) "subject to" art. XIV so that art. XIV was excluded from art. XV(C)'s application? Appellant reads XV(C) to say: Except for letting in limited partners under art. XIV, other amendments changing those three certain things require unanimous consent for passage.

At first glance, appellant seems to be correct. The "subject to" language seems to raise a fact issue concerning whether unanimous consent is required. However, a look at art. XV(D) concerning "non-unanimous" or 66⅔% consent shows that it *also* contains the "subject to" language. This, in effect, negates any possible meaning the "subject to" language had concerning unanimous consent and the admission of additional limited partners.

### Unanimous Consent "Required by Law"?

Appellant contends that unanimous consent was required "by law" to adopt the

---

4. Again, the three things listed in art. XV(C) are changes in:
  1) the general liabilities of the limited partners;
  2) the method of allocation of profits or losses; and
  3) the distribution of funds and assets.

amendments. Appellant points to TEX. REV.CIV.STAT.ANN. art. 6132a, sec. 10 in support of his argument. Section 10 is as follows:

> (a) A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have *no authority to:*
>
> . . . .
>
> (6) Admit a person as a limited partner, *unless the right so to do is given in the certificate* [agreement]. [Emphasis ours.]

*Id.*

■ We note that the amendments do not give the general partner the right to *admit* people as limited partners. The amendments merely allow the issuance of more than the previous maximum of 300 units, without specifying who will buy them. Under the new amendments the general partner still has the same authority to admit people as limited partners as he did under sec. XIV of the First Agreement. Therefore, unanimous consent to adopt the amendments is not "required by law."

■ Appellant next contends that TEX. REV.CIV.STAT.ANN. art. 6132a, secs. 25(b)(3), and 26(a)(2) (Vernon 1970) require that all limited partners must sign and swear to an amendment before it can be adopted. While this is an accurate statement of the law, we note that appellant and the other limited partners signed the First Amended Agreement which contained a power of attorney giving the general partners the power to sign any validly adopted amendment for the limited partners. Therefore, the actual signature of each limited partner on the agreement is not needed to validly adopt the amendments. *See* TEX.REV.CIV.STAT.ANN. art. 6132a, sec. 33 (Vernon Supp.1986).

We hold that as a matter of law the limited partnership agreement required the consent of only 66⅔% of the outstanding units of TRL. Appellant's first point of error is overruled.

In his second point of error appellant contends that the trial court erred in granting summary judgment because the limited partnership agreement is ambiguous as to whether unanimous consent was required to adopt the amendments, and, therefore, this issue should have been determined by the jury. In light of our holding under point of error one that the trial court correctly construed the agreement, we hold that the limited partnership agreement is not ambiguous and we overrule appellant's second point of error.

In his third point of error appellant contends that the trial court erred in granting summary judgment because there are fact issues as to whether appellees, RMI and CCK, have unclean hands or breached fiduciary duties to appellant in the adoption of the amendments.

Appellant's basis for this contention is that appellees, the general partners, "proposed to purchase for themselves 200 additional units which the Managing General Partner, RMI, then unilaterally valued at $10,000.00 per unit." Appellant complains that "no backup data" was furnished concerning the valuation of the units.

It is important to note that the offer to buy the units at $10,000.00 per unit was withdrawn prior to the hearing on the motion for summary judgment. Therefore, the question of whether appellees breached their fiduciary duties to the limited partners in undervaluing the units is moot.

Here, the issue is the *validity of the amendments.* This is a construction of contracts question which has already been addressed by this court. We held, earlier in the opinion, that the amendments were properly adopted and that units in excess of 300 may be issued at a price to be determined by the managing general partner. The value of these newly issued units is a separate question to be determined when and if they are issued.

Appellant's third point of error is overruled. The judgment is affirmed.