**D. H. McDONALD, Appellant,**

**v.**

**Robert DAVIS et al., Appellees.**

**No. 14411.**

Court of Civil Appeals of Texas.

Houston.

March 18, 1965.

Rehearing Denied April 15, 1965.

Herbert Finkelstein, Houston, for appellant.

Ross, Banks, May & Cron and Douglas E. Baer, Houston, for appellee on motion for rehearing.

BELL, Chief Justice.

Appellant sued appellees, Robert Davis and his partner, Douglas Robinson, for damages for wrongful breach of a contract which gave appellant the exclusive right, for a period of six months, to sell a Drive-In Grocery store. After trial to the court without intervention of a jury, judgment was rendered that plaintiff take nothing.

The contract which was dated November 17, 1962, reads as follows:

"To McDonald Realty

For and in consideration of your agreement to list and for your efforts to find a purchaser, I/we Douglas Robinson and Robert D. Davis, the undersigned, hereby authorize and give you, above named, the exclusive right, privilege, and agency for a period of 6 Mos. from this date, and thereafter until written notice of termination of this agreement is given, to sell at a price of $11,500, or any sum that I/we may accept, the property described as follows, to-wit: A Drive-in Grocery Located 5605 Spencer Hiway, Houston, Texas. Better known as D & D Grocery.

If said property is sold or exchanged during the term of this agreement, or if sold within three (3) months after the expiration of this agreement to any purchaser to whom it may have been submitted by you before the expiration of this agreement, I/we agree to pay you a commission of 10% of the sale price, at Houston, Texas.

I/we agree to furnish title policy and make proper conveyance of this property.

You are hereby authorized to place suitable signs on this property and remove other signs.

Accepted:

| McDonald Realty | D. Robinson |
| --- | --- |
| | Owner |
| By: D. H. McDonald | Robert D. Davis |
| | Owner" |

Mr. McDonald testified that he put an advertisement in the paper showing he had "drive-in grocery stores" for sale and that he showed this grocery store several times. He testified specifically to having shown it twice to a Mr. Falco. On Mr. Falco's second visit to the store in December, 1962, a lady at the store told him the property had been leased. This was on a Saturday. On the following Monday he talked by telephone to Mr. Davis. Davis said it was leased but the lease would not interfere with the sale as it was transferable. He then testified Mr. Davis told him they would not sell, that they could do what they wanted to with the property.

Mr. Falco testified that he saw the ad Mr. McDonald put in the paper and went to see him. McDonald showed him the place belonging to appellees. He was considering buying it but never did because the lady at the store told them it was not for sale.

On January 17, 1963, within the six months' period of the exclusive right to sell, Davis wrote the following letter addressed to McDonald Realty:

"We recently signed an exclusive listing agreement with you. The listing concerned the sale of D & D Grocery at 5605 Spencer Highway, Pasadena, Texas.

"We have decided not to sell this property at this time and, to save you further expense and trouble, we request that you remove this piece of property from your listings and from the market."

It is noted that nowhere does the record show that any sale was made of the property. A question asked by appellees' counsel suggests that in December, 1963, after the six months' period, it was sold for the debts against it. This is not evidence.

■ Appellant's theory is that appellees breached their contract by leasing the property and withdrawing it from the market, thus making performance by appellant impossible. The mere leasing, where the lease is transferable, is not of itself sufficient to show a breach by appellees. Appellant must, therefore, rest on a breach by reason of the withdrawal of the property from the market. We notice appellant pled impossibility of performance because of the lease and because of some alleged sale of the property. A sale is not shown, but undisputedly appellees withdrew the property from the market. This was proven without objection and we will treat this breach, if it was, as being tried by consent because the court found as a fact that the property had been withdrawn from the market. Appellant's theory is also that his damages are

prima facie the amount agreed upon as a commission.

We have no brief from appellees and they pled only a general denial. We divine from the record it is their theory that appellant would be entitled to damages only if a sale was made and that they could withdraw the property from the market at any time before sale without any liability for damages. Too, of course, they contend, no sale was ever made and further appellant proved no damages.

This suit is not one for a commission but is one for damages for breach of contract by appellees. The breach occurred when appellees withdrew the property from the market. This deprived appellant of the opportunity to perform. This is appellant's theory of recovery.

■ Whether appellant is correct depends on whether there was a unilateral or bilateral contract. This is not a mere offer by appellees that they would for six months make appellant their exclusive agent to look for a purchaser and if he produced a purchaser within that time he would pay appellant a commission. If such were the case, appellees could revoke the authority at any time before a purchaser was produced and would not be liable for damages. The reason is that the owner's undertaking is merely that if a purchaser is produced he will pay a commission. This is a mere offer that can be revoked at any time before acceptance. Acceptance is, within the terms of such an offer, to be made by producing a purchaser. No consideration exists until the purchaser is produced. Here the contract is bilateral. The appellant by the terms of the contract agreed as a part of the consideration for appellees' giving him the exclusive right to sell for a period of six months that he would list the property. Too, it was expressed that a part of the consideration was the effort of appellant to find a purchaser. Though there was no express promise to exert efforts to find a purchaser, the evidence shows without dispute that appellant advertised that he had

drive-in groceries for sale, that Mr. Falco answered the ad and that appellant took Mr. Falco to see the property on two occasions. Nothing further was done after the second visit because appellees withdrew the property from the market, thus revoking appellant's authority and making performance by appellant impossible. There resulted an enforceable contract giving appellant the exclusive right for six months to sell the property. Mechem, Law of Agency, Second Edition, Secs. 2451, 2453 and 2454; Park v. Swartz, 110 Tex. 564, 222 S.W. 156; Hancock v. Stacy, 103 Tex. 219, 125 S.W. 884; Holmes v. Holik, Tex.Civ.App., 238 S.W. 2d 260, error dism.; Simpson v. Mooney J. Sherman & Son Co., Tex.Civ.App., 223 S.W.2d 42, no writ hist.; Lewis v. Smith, Tex.Civ.App., 198 S.W.2d 598, dism. w. o. j.; Patton v. Wilson, Tex.Civ.App., 220 S.W.2d 184, ref., n. r. e.; McFarland v. Lynch, Tex. Civ.App., 159 S.W. 303, no writ hist.; Bell v. Dimmerling, 149 Ohio St. 165, 78 N.E.2d 49.

■ The principal may of course revoke an agent's authority where not coupled with an interest, but there is a distinction between his power to revoke and his right to revoke. He at any time before full performance can revoke the authority of an agent so the agent will lose his authority to bring the principal into legal relations with a third party. However, if he has no right to revoke it, he will be liable for damages suffered by the agent by reason of the wrongful revocation. Where, as here, there is a bilateral contract, the principal has no right to revoke to the prejudice of the agent. See authorities above cited; Pickett et ux. v. Bishop, 148 Tex. 207, 223 S.W.2d 222; and Brigham v. Cason, Tex.Civ.App., 233 S.W. 530, no writ hist.

■ Where a principal breaches the contract, he becomes liable in damages. Where, as here, suit is for breach of a contract granting the agent the exclusive right for a definite period of time to sell property, the damages are for breach of contract and not for the commission promised

if the agent sold. He is entitled to recover the reasonable profit he would have made. Prima facie that profit is the amount represented by the stipulated commission. Park v. Swartz, supra.

■ From the findings of fact and conclusions of law, and other matters in the record, it appears to us that the case was tried on the theory that appellees had the right to revoke at any time before a purchaser was procured and there would be no liability. Too, it appears there was never a sale within the period of the employment. In questioning of a witness it was suggested that the property was sold about a year after the contract was made for an agreement by the purchaser to assume the debts. The contract of employment provides an asking price of $11,500.00, or such an amount as appellees might agree upon. Because of the action of the trial court in holding no breach of contract, we must reverse the case. It is obvious to us that the matter of damages has not been fully developed. We, therefore reverse and remand.

Reversed and remanded.

On Motion for Rehearing

■ Appellees urge that in the case cited by us in which the broker was allowed recovery the property had been sold within the contract period by others than the broker but that this fact supplied the necessary certainty in damages whereas in this case there had been no sale. This is, of course, correct. However, the Supreme Court in Park v. Swartz et al., 110 Tex. 564, 222 S.W. 156, clearly states the rule applicable in Texas where a broker seeks to recover damages for a breach of his contract. The rule is not made dependent on whether the property has in fact been sold. The Court uses this language:

"The loss suffered by the plaintiff is the measure of his damages. That loss is the amount as fixed by the contract which he would have earned but for the wrongful conduct of the defendants in

preventing him from earning it. Upon establishing the contract, his readiness and willingness to perform it, and that he was denied opportunity to perform it through its wrongful breach by the defendants, rendering its performance by him impossible, the plaintiff made out his case; and prima facie was entitled as damages to the amount which under the contract he would, presumably, have earned if his rights had been respected. If the plaintiff could not or would not have performed the contract, regardless of its breach by the defendants, it was incumbent upon them to make the proof. This, they failed to do. Their action alone, according to the record here, was responsible for the plaintiff's being unable to perform it fully and completely. They denied him the right to perform it and are in no position to complain of the judgment."

Later, in the case of Pickett v. Bishop, 148 Tex. 207, 223 S.W.2d 222, the Supreme Court held the trial court had erred in sustaining an exception to the following allegations by the broker, and held on the authority of Park v. Swartz a prima facie case was alleged:

"By the terms of the memorandum copied in the petition the defendant appointed the plaintiffs his exclusive agents for a period of sixty days to sell his property, agreeing to pay them a cash commission of five per cent. The petition alleges that the plaintiffs began a course of advertising the property, showed it to a *mem*ber of prospective purchasers, and in other ways exerted themselves to make a sale, and that they would have continued their efforts to sell and the expenditure of money to advertise the property until it was actually sold, but for the defendant's breach of the contract; and that the defendant, before the expiration of the sixty day period and without the knowledge of the plaintiffs, sold the property through another real estate agent. The suit is for damages on account of the defendant's alleged breach of the contract.

"In our opinion the second special exception should have been overruled. Proof of the allegations contained in the petition would prima facie make a case for the plaintiffs."

The motion for rehearing is overruled.