The **CORNERSTONE GROUP, INC.,**
d/b/a **Red Carpet Realty,**
Appellant,

v.

**Donald H. STONE, Appellee.**

No. 2–85–096–CV.

Court of Appeals of Texas,
Fort Worth.

June 11, 1986.

Rehearing Denied July 23, 1986.

Whitten, Loveless, Kelsey, Gregory, Holt & Phillips, Richard H. Kelsey, Denton, for appellant.

William L. Smith, Jr., Denton, for appellee.

Before FENDER, C.J., and HILL and ASHWORTH (Retired, Sitting by Assignment), JJ.

## OPINION

FENDER, Chief Justice.

This is an appeal from a judgment denying damages to appellant, Red Carpet Realty, plaintiff in the trial court, for a breach of an exclusive listing real estate brokerage contract. Appellee, Donald H. Stone, had employed Red Carpet to sell four tracts of land belonging to Stone. The land had on it a damaged building and a large swimming pool. A written exclusive listing agreement was prepared and signed. The agreement began on February 22, 1983 and extended to September 30, 1983. The list price was $550,000.00.

We affirm.

Paragraph three of the listing agreement states: "Owner shall not rent or lease the herein described property during the term of this agreement without the written approval of REALTOR." Paragraph four states: "Owner agrees to pay REALTOR, in cash, at the time of closing, a commission of six percent of the gross sales price of said property: ... (2) if during the term of this agreement Owner *prevents the sale of said Property* by attempting to cancel this agreement, *by adversely renting the Property during the period of this agreement,* or otherwise ...." (emphasis added). Paragraph eight states: "Owner covenants to refrain from negotiation with any prospective purchasers or their agents or representatives who may contact Owner directly, and shall direct all such prospects and their agents or representatives to REALTOR."

During the existence of the listing agreement, Stone leased the property to Liberty Church. Rev. Gary Adams of Liberty Church had been negotiating with Red Carpet concerning the purchase of the property. However, he testified that all negotiations with Red Carpet had terminated and they had abandoned the idea of purchasing the property because they were "out priced without any options of ... flexible financing." He further testified that they were under pressure to obtain some property on which to run their church school. Therefore, they began negotiations to lease the property from Stone, and a lease agreement was entered into by Liberty Church and Stone during the term of Stone's listing agreement with Red Carpet, and approximately one month before said agreement expired. Approximately eight months after the listing agreement with

Red Carpet expired,[1] Stone sold the land to Liberty Church.

Rev. Adams testified that the church was not financially able to buy the property from Red Carpet during the time the listing agreement was in effect. He testified that he was able to get a bank loan and to buy the property only after the listing agreement had ended because, by that time, they had successfully run the church school on the leased property and, because of this, they were in a better position to ask for a bank loan.

The jury made the following findings to the following pertinent special issues:

1. That Stone had breached the exclusive listing agreement;

2. That Stone did not prevent the performance of the exclusive listing agreement;

3. That the amount of fair compensation due Red Carpet reasonably caused by the breach by Stone was "none";

4. That Red Carpet did not perform valuable real estate services for Stone pursuant to an agreement that Red Carpet would be compensated for its services;

6. That the reasonable amount of attorneys' fees necessarily incurred by Red Carpet in preparing and presenting the case was $5,000.00.

Red Carpet filed a motion for judgment on the jury verdict, a motion to disregard jury finding number three, and a motion for judgment non obstante veredicto. All of Red Carpet's motions were overruled and a take nothing judgment was rendered against appellant, Red Carpet.

All of Red Carpet's points of error were grouped under one argument in their brief. The points of error are as follows:

(1–3) The trial court erred in overruling Red Carpet's motion a) for judgment on the verdict; b) for judgment non obstan-

te veredicto; c) to disregard the answer of the jury to special issue number three;

(4) The trial court erred in entering judgment for Stone because there is no evidence or insufficient evidence to support the finding of the jury to special issue number three;

(5) The trial court erred in rendering judgment for Stone because the answer of the jury to special issue number three was against the great weight and preponderance of the evidence;

(6) The trial court erred in rendering judgment for Stone because Red Carpet's damages were established as a liquidated sum as a matter of law.

The issue before us is: was the contract breached and, if so, what is the appropriate measure of damages? We will consider these questions in regard to each of the three paragraphs (three, four and eight) of the agreement which Red Carpet contends that Stone breached. Having done that, we will then address each of Red Carpet's points of error. We will first consider paragraph four of the agreement.

■ Paragraph four states that the owner agrees to pay the realtor the six percent commission if during the term of the agreement, the owner *prevents the sale* of the property by renting the property during the period of the agreement. For the reasons discussed below, we find that this paragraph of the agreement was not breached. While there is ample evidence in the record that Stone leased the property to Liberty Church, there is little or no evidence that the leasing prevented the sale of the property.

Peggy Walker, the past president of Red Carpet, testified that it would "definitely" affect the ability to sell property if it was leased because if a purchaser came in, they would "need that property immediately." However, Walker further testified that she had never showed the property to a pros-

---

1. The listing agreement expired in September 1983 but contained an extension which stated that if Stone sold the property within 60 days of the end of the agreement to anyone Red Carpet negotiated with, then Stone would still owe the six percent commission to Red Carpet. This extension did not apply because the property was sold more than two months after the end of the agreement.

pect other than Liberty Church and never even had any discussions with any other prospective purchasers. When asked whether there were other qualified viable prospects around to buy the property, Walker testified that there weren't any that she knew of. When asked whether Stone prevented the sale of the property in breach of paragraph four of the agreement, Walker testified that Stone prevented the sale *to Liberty Church.*

As shown by the testimony, Stone's leasing of the property to Liberty Church did not inhibit their desire to buy the property.[2] Only a lease to a third party would have caused Liberty Church to lose interest because *then* they would not receive possession of the property immediately. Also, Rev. Adams testified that the church was not financially able to buy the property during the period of the listing agreement.

We find that there is sufficient evidence to support the jury's finding to special issue number two that Stone did not prevent the performance of the agreement by Red Carpet. We overrule Red Carpet's contention that paragraph four was breached.

■ Paragraph three prohibited the owner from renting or leasing property without the written approval of the realtor. Paragraph eight prohibited the owner from negotiating with any prospective purchasers. Obviously, paragraph three of the agreement was breached because the property was leased to Liberty Church without the approval of Red Carpet. Paragraph eight also may have been breached if Stone's agreement to lease the property to Liberty Church can be considered a "negotiation with [a] prospective purchaser."

We will now address Red Carpet's points of error.

Red Carpet's points of error four and five concern the findings of the jury to the third special issue: that Red Carpet suffered no damages due to Stone's breach.

Red Carpet contends that there is no evidence or insufficient evidence to support the finding and that it is against the great weight and preponderance of the evidence. We disagree and find that the evidence shows that Red Carpet suffered no damages because of Stone's breach.

In a case similar to the one before us, *Park v. Swartz,* 110 Tex. 564, 222 S.W. 156 (1920), the owner had granted to a real estate broker an exclusive right to sell his property. During the term of the contract, the owner sold the property to a third party in breach of this agreement. The Texas Supreme Court held that the owner had breached the contract for which he was liable in damages and that because the broker had established the contract, his readiness and willingness to perform it and that he was denied the opportunity to perform the contract because of the owner's breach, he had also established a prima facie case for the contract damages which he presumably would have earned if permitted to perform. *Id.* 222 S.W. at 156. The court further held that it was incumbent upon the owner, if he wished to rebut this prima facie proof of damages, to offer proof *that the broker would not or could not have performed, regardless of the breach. Id.* 222 N.W. at 156–57. *See also Dowd More Company Realtors v. McDonald,* 494 S.W.2d 282, 283 (Tex.Civ.App. —Houston [1st Dist.] 1973, no writ).

■ We find that Red Carpet was not denied the opportunity to perform the contract because of Stone's breach. The evidence shows that Red Carpet would not or could not have performed, regardless of the breach. Red Carpet admitted that there was only one potential purchaser of the property: Liberty Church. Rev. Adams of Liberty Church testified that the church was financially unable to buy the property and that all negotiations had ceased with Red Carpet. Therefore, the

---

**2.** Although Liberty Church was hard pressed to find a place for their church school, other property was available for them to purchase. Apparently, financing was available for this other property. Also, the lease price was $53,500 as prepaid rent to be used for renovation of the property and $4,000 per month thereafter for the three year lease term which is not so much more favorable over the purchase price that Liberty Church would have preferred to lease.

evidence establishes that Red Carpet could not have sold the property regardless of whether Stone had negotiated with and leased the property to Liberty Church. We hold that Stone has rebutted Red Carpet's prima facie proof of damages and that Red Carpet has not shown that it was entitled to any damages. Red Carpet's points of error four and five are overruled.

Red Carpet's contention in their sixth point of error that the measure of damages is a liquidated amount: the six percent commission, is unfounded. It is true that where a principal breaches the contract, he becomes liable in damages. Where, as here, suit is for breach of a contract granting the agent the exclusive right for a definite period of time to sell property, the damages are for breach of contract and not for the commission promised if the agent sold the property. *See McDonald v. Davis*, 389 S.W.2d 494, 497 (Tex.Civ.App.—Houston 1965, no writ). The agent is entitled to recover the reasonable *profit he would have made. Id.* Here, Red Carpet has not shown that it would have made any profit other than their offer of prima facie proof which has been rebutted. Point of error six is overruled.

In its brief, Red Carpet argues that special issue number three wrongfully placed the burden of proving damages on them. Special issue number three was not objected to in the trial court. Therefore, any error is waived, *see Dodson v. McCoy*, 601 S.W.2d 128, 130 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ), and this contention is overruled.

We also overrule Red Carpet's points of error one, two and three. All three of these points are based on Red Carpet's contention that the damages for breach of the contract are established as a matter of law (the six percent commission). This matter has already been addressed in the portion of the opinion concerning point of error six.

The judgment is affirmed.