# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## ON MOTION FOR REHEARING

---

### NO. 03-07-001-CV

---

**Appellant, Texas Energy Innovation, Inc., f/k/a Power Choice, Inc.// Cross-Appellants, Hino Electric Power Company, Inc. and Hino Electric Holding Company, L.P.**

**v.**

**Appellees, Hino Electric Power Company, Inc. and Hino Electric Holding Company, L.P.// Cross-Appellee, Texas Energy Innovation, Inc., f/k/a Power Choice, Inc.**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. GN-04-001109, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

We withdraw our opinion of December 18, 2009, and substitute the following opinion in its place. Appellant's motion for rehearing is denied.

Texas Energy Innovation, Inc. ("TEI"), formerly known as Power Choice, Inc., sued Hino Electric Power Company, Inc. ("Hino Power") and Hino Electric Holding Company, L.P. ("Hino Holding") (collectively, "Hino") for breach of contract. TEI and Hino Power entered into a contract whereby TEI agreed to (1) assist Hino Power in obtaining regulatory approval to sell electricity, (2) supply Hino Power with electricity to sell, and (3) refrain from supplying electricity to any of Hino Power's competitors. In return, Hino Power agreed to obtain its full electricity

requirements from TEI for thirty years and to pay TEI a five-percent commission on all electricity it obtained through TEI. After Hino Power obtained regulatory approval, it began obtaining electricity from companies other than TEI. TEI sued, and Hino moved for summary judgment on the basis that TEI could not prove its damages. Hino also countersued, claiming that TEI had committed fraud, malpractice, and breach of fiduciary duty. TEI moved for summary judgment on Hino's counterclaims, arguing that they were time-barred. The trial court granted both parties' summary judgment motions, and both parties appealed. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In the late 1990s, attorney Robert Webb and his business partners founded TEI to assist companies wanting to enter Texas's rapidly changing electricity market. Hino Power, looking to enter the market, enlisted the aid of Webb and TEI in 1998. In exchange for assistance with entering the market, Hino Power contractually agreed to obtain all of its electricity through TEI for thirty years and to pay TEI a five-percent commission on all electricity it obtained through TEI. The contract provided that TEI would act as a broker and obtain electricity from third parties on Hino Power's behalf. The contract also provided, however, that if TEI was unable to supply all of the electricity Hino Power needed, Hino Power could obtain electricity from other sources without paying TEI a commission. The contract prohibited TEI from working with any company other than Hino Power. Indeed, as of the time it appealed, TEI had never conducted any business other than its relationship with Hino Power.

TEI, Webb, and Hino Power had a somewhat complicated relationship. Between 1998 and 2000, Webb provided legal services to Hino Power in conjunction with its efforts to obtain

2

regulatory approval. At the same time, Webb pursued the business interests of TEI, including negotiating the aforementioned contract with Hino Power. Webb drafted the contract, which Hino would later characterize as "one-sided, illegal, and self-serving." It appears that Webb disclosed his potential conflict of interest to Hino Power, but, as discussed below, Hino Power nevertheless eventually claimed that Webb (and TEI by proxy) acted improperly in the context of the TEI-Hino Power relationship.

TEI's and Webb's initial efforts to obtain regulatory approval for Hino Power failed, and Webb requested additional funding for further efforts. Hino Power refused, and in 2000 it hired a new attorney. In 2002, Texas's electricity market changed markedly when it was deregulated. Against that backdrop and with the assistance of its new attorney, Hino Power became a licensed retail electricity provider in 2003. Once licensed, it obtained its electricity from sources other than TEI. Hino claims that it did so because it believed the parties' contract expired when Webb stopped working for Hino Power in 2000.

In 2003, Hino Power's principals formed a second company, Hino Holding, whose relationship to Hino Power is not completely clear. In 2004, TEI sued Hino Power for breach of the parties' contract. In 2006, TEI amended its petition to add Hino Holding as a defendant. TEI alleged that it remained ready, willing, and able to perform under the contract but that Hino had breached the contract by obtaining electricity from other sources. Hino asserted various affirmative defenses and also countersued. Apparently holding TEI to the same standard as its attorney-principal Webb, Hino alleged that TEI had committed fraud, breached fiduciary duties, and committed legal malpractice in the course of the parties' relationship. Hino also impleaded Webb as a third-party defendant, though he is not a party to this appeal.

3

Discovery ensued, and TEI named an accountant as its damages expert. The trial court eventually struck the accountant as a witness to sanction TEI for various discovery abuses. After the court did so, Hino moved for partial summary judgment on the basis that TEI could not establish its damages without an expert witness. Hino styled its motion as both a traditional summary judgment motion and a no-evidence summary judgment motion. *See* Tex. R. Civ. P. 166a(c), (i).

TEI also moved for summary judgment, claiming that Hino's counterclaims were time-barred. TEI alleged that at the latest, Hino's causes of action accrued when the parties' relationship soured in 2000, so the statutes of limitations ran on them well before Hino countersued in 2006. TEI also alleged that Hino Holding could not have had any claims against it because Hino Holding did not even exist until roughly three years after TEI and Webb stopped working with Hino Power.

The trial court granted both parties' motions for summary judgment. TEI appealed, and Hino cross-appealed.

**STANDARD OF REVIEW**

A "traditional" motion for summary judgment is properly granted when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or prove as a matter of law each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

4

A party seeking a "no-evidence" summary judgment, on the other hand, does not bear the burden of establishing its right to judgment by proving a defense or claim, but instead asserts that there is no evidence of one or more essential elements of a claim on which the opposing party will have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Holmstrom*, 26 S.W.3d at 530. If the nonmovant fails to produce more than a scintilla of probative evidence raising a genuine issue of material fact as to each challenged element on which he has the burden of proof, summary judgment is proper. *Id*.

In reviewing a grant of summary judgment, we take as true evidence favorable to the nonmovant, making every reasonable inference and resolving all doubts in the nonmovant's favor. *Centeq Realty*, 899 S.W.2d at 197.

## DISCUSSION

### *Hino's Summary Judgment Motion*

The elements of a breach-of-contract claim are: (1) the existence of a valid contract; (2) performance or tentative performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damage to the plaintiff as a result of the defendant's breach. *Stewart v. Sanmina Tex., L.P.*, 156 S.W.3d 198, 214 (Tex. App.—Dallas 2005, no pet.). Hino's summary judgment motion turned on the fourth element. If Hino is correct that without expert testimony TEI had no evidence of its damages, then Hino was entitled to both traditional and no-evidence summary judgment on TEI's breach-of-contract claim.[1]

---

[1] TEI argues that Hino could not have been entitled to no-evidence summary judgment because Hino's argument that TEI needed expert testimony to prove its damages was a "purely legal" issue. In support of this argument, TEI cites *Harrill v. A.J.'s Wrecker Service, Inc.*, 27 S.W.3d 191, 194 (Tex. App.—Dallas 2000, pet dism'd w.o.j.), in which the court stated in dicta that "purely legal issues can never be the subject of a no-evidence motion for summary judgment." Other courts have

5

The parties debate what kind of damages evidence TEI needed in the absence of expert testimony to survive summary judgment. TEI argues that the five-percent-commission clause in the parties' contract was enough, as it quantified what TEI stood to gain if Hino had not breached. In support of this position, TEI cites cases holding that a breached commission contract itself serves as prima facie evidence of damages. *See, e.g.*, *Park v. Swartz*, 222 S.W. 156, 156-57 (Tex. 1920); *Genitempo v. Chardee, Inc.*, 822 S.W.2d 824, 826 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *McDonald v. Davis*, 389 S.W.2d. 494, 497 (Tex. Civ. App.—Houston 1965, no writ). Hino, on the other hand, argues that TEI needed evidence that it would have netted a profit under the parties' contract. In support of this position, Hino cites cases holding that "the correct measure of damages is lost net profit." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 n.1 (Tex. 1992); *see also Wade v. Southwestern Bell Tel. Co.*, 352 S.W.2d 460, 462 (Tex. Civ. App.—Austin 1961, no writ) (plaintiff must show loss of net profits to recover for breach of contract).

The parties suggest that their respective cases employ different evidentiary standards, but in fact the cases simply illustrate that sometimes a commission contract can be legally sufficient evidence of damages. *See McDonald*, 389 S.W.2d. at 497 (prima facie, plaintiff's reasonable profit would have equaled his commission). Thus, in a sense, both parties are correct: TEI must present evidence that it incurred damages to survive summary judgment, but that evidence may include the commission clause of the parties' contract.

---

disagreed with this statement. *See Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147, 156 n.4 (Tex. App.—Eastland 2002, pet. denied). We express no opinion on it because Hino's argument was not "purely legal"; rather, Hino argued both that TEI needed expert testimony as a matter of law and that TEI could produce no legally sufficient damages evidence. But even if *Harrill* were correct and Hino's argument was "purely legal," the outcome here would not change because Hino would still be entitled to traditional summary judgment (as explained below).

We say "include" rather than "consist of" because in this case the parties' contract is not sufficient by itself to establish that TEI incurred damages. Some Texas courts have found commission contracts themselves to be prima facie evidence of damages when they related to discrete transactions of readily quantifiable value. *See, e.g.*, *Park*, 222 S.W. at 156 (commission on sale of real property); *Genitempo*, 822 S.W.2d at 824 (commission on sale of vessel); *McDonald*, 389 S.W.2d. at 497 (commission on sale of real property); *see also Midas Fins., Inc. v. SCH-Trident, Inc.*, No. 05-08-00751-CV, 2009 Tex. App. LEXIS 4812, at *1 (Tex. App.—Dallas June 25, 2009, no pet.) (mem. op.) (commission on acquisition of loan). Here, the parties' commission contract concerns unspecified quantities of a fungible asset in a rapidly changing market, endures for a very long time (thirty years), and even expressly acknowledges that TEI may not be able to meet Hino Power's needs. Given these variables, TEI needed to show more than just its five-percent commission rate to establish that it was damaged.

We turn, then, to considering what sort of damages evidence TEI needed to produce to survive summary judgment. Generally speaking, whether a plaintiff has incurred any lost profits is determined by subtracting a plaintiff's operating expenses from the gross profits the plaintiff would have earned under a contract had the defendant not breached. *See Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 884 (Tex. App.—Austin 2006, pet. granted, judgm't vacated w.r.m.) ("Lost profits are damages for the loss of net income to a business, and, broadly speaking, reflect[] income from lost business activity less expenses that would have been attributable to that activity.") (citations omitted). A plaintiff's figures do not need to be exact, but they do need to approximate lost profits with "reasonable certainty." *Texas Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994).

7

As a matter of law, the requisite level of certainty cannot be established for "[p]rofits which are largely speculative, as from an activity dependent on uncertain or changing market conditions, or on chancy business opportunities, or on promotion of untested products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise." *Id*. All of these descriptions aptly apply here; the entire purpose of the parties' contract was to facilitate the entry of a new business (Hino Power) into a rapidly changing market, and that entry turned on the success of a new and unproven enterprise (TEI). Nevertheless, for the sake of thoroughness, we will still analyze TEI's damages evidence.

TEI argues that the record contains evidence of its lost gross profits in the form of Hino Power's post-2003 ledgers, which show the amount of electricity Hino Power purchased from parties other than TEI. TEI argues that its gross profits would have equaled a five-percent commission on those purchases (or at least an identifiable subset of them) if Hino Power had not breached. TEI also argues that the record contains evidence of its operating expenses in the form of figures that Webb generated to assist TEI's stricken expert in formulating his opinion.

We need not reach TEI's operating-expense evidence, as it is clear from TEI's gross-profit evidence alone that TEI's claims could not survive summary judgment.[2] Contrary to TEI's assertion, Hino Power's ledgers do not provide a measure of TEI's lost gross profits. Even if we assume, as TEI says we must, that TEI was ready, willing, and able to perform under the parties' contract, TEI provided no evidence from which a fact-finder could determine with reasonable certainty the amount of TEI's gross profits. TEI offered no evidence to support the conclusion that

---

[2] We note, however, that as Justice Patterson's concurrence demonstrates, TEI's operating-expense evidence may also be insufficient as a matter of law.

it could have brokered Hino's power purchases at the prices or from the sources reflected in Hino Power's ledgers. TEI's performance depended on the cooperation of third-party electricity suppliers,[3] and those suppliers could have chosen not to deal with TEI or to charge it prices different from those reflected in Hino Power's ledgers. Absent any evidence that TEI would have obtained the power at the rates reflected in the ledgers, TEI has not established that it would have made a gross profit under the contract. It necessarily follows that TEI has provided no evidence that it lost profits, i.e., suffered damages. The trial court therefore properly granted Hino's summary judgment motion.

### TEI's Summary Judgment Motion

The trial court granted TEI's summary judgment motion on the basis that Hino's counterclaims for fraud, breach of fiduciary duty, and legal malpractice were time-barred. Assuming that these claims are cognizable,[4] we hold that summary judgment was proper.

The statute of limitations for fraud and breach of fiduciary duty is four years. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4)-(5) (West 2002). The statute of limitations for legal malpractice is two years. *Sotelo v. Stewart*, 281 S.W.3d 76, 81-82 (Tex. App.—El Paso 2008, pet. denied). Hino brought its counterclaims in 2006. Thus, Hino's fraud and breach of fiduciary duty claims were time-barred if they accrued before 2002, and its malpractice claim was time-barred if it accrued before 2004. Hino argues that all of its claims accrued when TEI filed suit in 2004. TEI

---

[3] TEI could not generate electricity itself; it could only broker electricity generated by others.

[4] It is not clear how TEI, a corporation, could have breached a fiduciary duty on these facts or committed legal malpractice, but the parties have not briefed the issue.

9

argues that Hino's claims accrued in 2000, when Hino Power terminated its dealings with TEI and hired a new attorney.

Generally, claims accrue when "when a wrongful act causes some legal injury." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam). The "discovery rule," however, dictates that the clock does not start to run on claims that are inherently difficult to perceive until the plaintiff "discovers, or through the exercise of reasonable diligence should have discovered, the facts establishing the elements of a cause of action." *Sotelo*, 281 S.W.3d at 82. Courts have held that the discovery rule applies to fraud, breach of fiduciary duty, and legal malpractice claims, either because (as with fraud) the wrongs are by definition covert or because (as with breach of fiduciary duty and legal malpractice) people are entitled to rely on those who owe them special legal duties. *See S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

In essence, then, the question of when Hino's causes of action accrued is really the question of when Hino discovered or should have discovered TEI's alleged wrongs. We find no merit in Hino's argument that it did not discover and should not have discovered TEI's wrongs until TEI filed suit. First of all, to the extent that Hino argues the filing of a suit was itself a legal wrong, it is incorrect. *See RRR Farms, Ltd. v. American Horse Protection Ass'n, Inc.*, 957 S.W.2d 121, 134 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) ("Filing a complaint is not an improper or illegal use of the process."). If filing suit against a client were legal malpractice per se, as Hino seems to contend, then attorneys could never sue their clients no matter how their clients wronged them. Second, to the extent that Hino's claims arise from the parties' contractual dealings, the evidence is clear that Hino Power became concerned about those dealings in 2000. Indeed, Hino Power went so far as to terminate TEI's and Webb's services and get a new attorney in 2000. The

10

record also indicates that in 2000 or 2001 Hino Power was advised by its new attorney that TEI might have wronged it. At the latest, then, Hino Power was alerted to a potential need to protect its legal rights in 2000 or 2001. Its counterclaims were therefore time-barred in 2006.

To the extent that Hino Holding's counterclaims were merely derivative of Hino Power's, they too were time barred. *See Guillot v. Hix*, 838 S.W.2d 230, 235 (Tex. 1992) (derivative claim accrues at same time as claim it derives from). Hino argues, however, that regardless of when Hino Holding's counterclaims accrued, they were saved by section 16.069 of the Texas Civil Practice and Remedies Code. That statute provides that time-barred counterclaims may be maintained if they (1) arise out of the same transaction or occurrence that underlies the plaintiff's suit and (2) are pleaded within thirty days of when the counterclaimant's answer is due. Tex. Civ. Prac. & Rem. Code Ann. § 16.069 (West 2008).

TEI first named Hino Holding as a defendant in the amended petition that it filed on March 1, 2006, and Hino Holding asserted its counterclaims in the answer it filed on March 30, 2006. Hino Holding's counterclaims therefore met the timeliness requirement of section 16.069.[5] The remaining question is whether they also met section 16.609's same-transaction-or-occurrence requirement.

We hold that they did not. To determine what constitutes a "transaction" under section 16.609, "we employ the logical relationship test, which asks whether the essential facts on which the claims are based are significantly and logically relevant to both claims." *Wells v. Dotson*,

_____

[5] Section 16.069 could not have saved Hino Power's counterclaims, on the other hand, as Hino Power was first sued in 2004 and did not counterclaim until 2006.

11

261 S.W.3d 275, 281 (Tex. App.—Tyler 2008, no pet.). Hino Holding's counterclaims were based on TEI's and Webb's actions between 1998 and 2000—specifically, (1) Webb's efforts to induce Hino to contract with TEI and (2) Webb's subsequent legal representation of Hino despite his conflicting interests. TEI's claims, on the other hand, were based on Hino's procurement of electricity from third parties in 2003 and 2004. Because Hino's and TEI's claims turn on completely distinct sets of facts, we conclude that Hino Holding's counterclaims were time-barred. *See* Tex. Civ. Prac. & Rem. Code § 16.609.

Finally, the Hino entities argue that TEI's summary judgment motion was procedurally defective because TEI did not properly give Hino notice of the hearing on it. We reject this argument. Regardless of TEI's allegedly defective notice, Hino actually knew of TEI's motion, responded to the motion, and participated in the hearing on the motion without seeking a continuance. Hino therefore suffered no prejudice from the allegedly deficient notice and cannot complain of it on appeal. *See Goode v. Avis Rent-A-Car, Inc.*, 832 S.W.2d 202, 204 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (affirming summary judgment despite technically deficient notice because appellant responded to motion and participated in hearing).

## CONCLUSION

Because TEI's damages evidence was insufficient as a matter of law, Hino was entitled to summary judgment on TEI's claims. TEI was entitled to summary judgment on Hino Power's counterclaims because they were time-barred, and it was entitled to summary judgment on Hino Holding's counterclaims because they were not saved by section 16.069 of the Texas Civil Practice and Remedies Code. We affirm the summary judgments against all parties.

12

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton;
   Concurring Opinion by Justice Patterson

Affirmed on Rehearing

Filed:   February 12, 2010

13